UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ANITA B. HARRIS,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No. EDCV 14-01959 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for social security disability insurance and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are summarized in the Joint Stipulation. [See JS 2-4]. In a July 13, 2012 written hearing decision that constitutes the Commissioner's final decision in this matter, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of light work and could perform jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that plaintiff was not disabled at any time through the date of his decision. [Administrative Record ("AR") 30-42].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Statement of Disputed Issues**

The only disputed issue is whether the ALJ made a properly supported credibility finding. [JS 4-].

**Discussion**

**Credibility finding**

Plaintiff contends that the ALJ failed to articulate legally sufficient reasons supporting his negative credibility finding.

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the pain or other subjective symptoms alleged, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected

the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness, and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as: (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

The ALJ found that plaintiff had severe impairments consisting of hypertension, chronic heart failure, degenerative disc disease of the cervical spine without evidence of radiculopathy, bilateral carpal tunnel syndrome, bilateral rotator cuff tendinitis, and status post left clavicle fracture. [AR 32]. The ALJ determined that plaintiff's subjective symptom testimony was credible only to the extent that it was consistent with his finding that plaintiff retained the RFC to perform light work with a nonexertional limitation precluding work above shoulder level on the left side or with the left upper extremity. [AR 35].

Plaintiff was born in 1964 and was 48 years old when the ALJ issued his decision. [AR 63]. She testified that she last worked as a clerk at a grocery store in 2002. She stopped working after a box of frozen food fell on her head, shoulder, and back, fracturing her clavicle. Since the injury she had experienced diminished strength in her left shoulder, making it difficult to lift things or do her hair. She also had

experienced some loss of strength on her right side, but less than on her left. Plaintiff had been prescribed medication for depression for four or five years, and her psychiatrist had recently increased the dosage, which helped her. Plaintiff had a stroke in 2007, a heart attack in 2008, and another heart attack in 2011. Plaintiff said that she was told that her heart attacks were related to her high blood pressure. She was taking four different anti-hypertensive medications. Plaintiff also had carpal tunnel syndrome in both hands and elbows. [AR 51-55].

Asked to describe her symptoms that interfered with her ability to work, plaintiff said that she could not work due to her "heart, my sciatica, and my hands." [AR 56]. She had a "a lot of headaches, a lot of migraines. I'm pretty much in my room all the time." [AR 56]. She watched television or listened to the radio, and rarely went to church or social functions. [AR 63]. She had little energy and experienced shortness of breath. She had diabetes and monitored her blood sugar level. She could not stand in one place for long because of sciatica in her right leg and balance problems related to her stroke. She could stand for 15 minutes if she could lean against something, but that she could not walk for 15 minutes. She usually used a cane whenever she went out, because she never knew how far or how long she might have to walk, but she did not bring it to the hearing because her daughter was there to help her. She said that Dr. Lewis had recommended that she use a cane a few years earlier. She had ganglion cysts in her wrists and carpal tunnel syndrome, so she had a "hard time" picking things up and grabbing things. She could hold onto things for a short time. She had last received treatment for her wrists in 2010. [AR 33, 56-59, 62].

Plaintiff said that she took four or five pain medications. Her medications made her feel sleepy all the time, and she did not feel like doing anything or going anywhere. Plaintiff did not do housework, laundry, or cooking, and had not been able to do housework since her stroke in 2007. Her daughter came by two or three times a week and cooked for plaintiff and her sons, who were in their 20s and lived with her. She had a driver's license but did not drive. She went grocery shopping with the help of her children and rode in an electric cart. Her sons helped her take a bath. She did not take showers because she had to stand up too long. She had needed help taking a bath since her stroke in 2007. [AR 59-62].

Since there was "no evidence of malingering, the ALJ could "reject [plaintiff's] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Lingenfelter v Astrue, 504 F.3d 1028, 1036 (9th. Cir. 2007). In finding plaintiff's subjective symptom allegations less

4

than fully credible, the ALJ noted that the relevant period for purposes of plaintiff's disability insurance claim was the period from October 2002, her alleged onset date, through September 2005, her date last insured. The ALJ correctly concluded that there was no evidence to support any disabling functional limitation prior to September 2005. For purposes of plaintiff's SSI claim, the relevant period began in December 2010, when she filed her SSI benefits application. The ALJ noted that a significant amount of the evidence of record concerned the period before that date.[1]

The ALJ summarized the medical evidence in his decision.[2] Plaintiff fractured her clavicle at work in July 2002, but that the medical evidence indicated that she was released to work in 2003 with modified duties, and that she indicated that the physical therapy she underwent was effective. [AR 37-38; see AR 306-331, 367-370]. In 2003, plaintiff was diagnosed with degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, and ulnar entrapment at the elbows. [AR 37-38, 306-331, 367]. However, there are no medical records for the period from October 2003 through September 2007. [AR 37-38, 306-366]. The ALJ permissibly concluded that the lack of objective medical evidence and lack of evidence of treatment undermined plaintiff's allegations of disabling pain and other symptoms prior to the expiration of her disability insured status in September 2005. See Burch, 400 F.3d at 681 (holding that the ALJ permissibly considered the lack of objective medical evidence as one factor in his credibility analysis and did not err in discrediting the claimant's pain testimony where the evidence showed inconsistent treatment and gaps in treatment for allegedly disabling conditions).

The ALJ did not err in rejecting the alleged severity of plaintiff's subjective complaints concerning the relevant period for her SSI benefits beginning in December 2010 based on the lack of objective medical evidence and plaintiff's treatment history. [AR 37-39]. In October 2007, plaintiff underwent a consultative orthopedic examination with Dr. Lewis that was requested by the state disability services agency. [AR 38, 342-366]. Dr. Lewis wrote that it was his understanding that the "primary purpose" of his evaluation was

---

[1] For purposes of plaintiff's disability insurance benefits claim, the relevant time period is October 2002, plaintiff's alleged date of onset of disability, through her date last insured, September 20, 2005. For purposes of her SSI benefits claim, the relevant time period is December 2010 onward. [See AR 37].

[2] Plaintiff does not dispute the accuracy of the ALJ's summary of the medical evidence. [See JS 4, 5-15].

to evaluate her as a candidate for bilateral carpel tunnel release surgery.[3] [AR 364]. On physical examination, plaintiff exhibit slight to mild tenderness in the neck, mild left shoulder tenderness with slight decreased range of motion, moderately decreased range of motion of the cervical spine and upper extremities, decreased sensation in the arms bilaterally, and full motor strength in the upper extremities. [AR 38]. Although there was no current electrodiagnostic evidence of median nerve compression, Dr. Lewis concluded that it was "medically probable that with increased use of both upper extremities" plaintiff would develop evidence of median nerve compression, and on that basis he recommended bilateral carpal tunnel release. [AR 38, 364]. He prescribed bilateral wrist splints. [AR 365]. There is no evidence that plaintiff underwent bilateral carpal tunnel release.

Plaintiff sought treatment in 2009 and 2010 from Riverside County Regional Medical Center (both in the emergency department and the family care clinic) for complaints of upper extremity pain, back pain with radiculopathy to the lower extremities, chest pain, shortness of breath, and hypertension. [AR 38, 376-517]. August 2010 x-rays of the lumbar spine showed only mild degenerative disc disease with mild disc narrowing at L4-5. [AR 38, 379]. Plaintiff had an abnormal stress EKG in May 2010. [AR 38, 426].

In February 2011, plaintiff underwent a consultative psychiatric examination at the Commissioner's request. [AR 34, 523-531]. Dr. Abejuela diagnosed a "mood disorder due to general medical condition" and concluded that plaintiff's psychiatric limitations were "none to mild." [AR 34, 527-529].

In March 2011, plaintiff underwent an consultative internal medical examination at the Commissioner's request. [AR 38, 548-555]. Dr. To diagnosed hypertension without end organ damage; diabetes, diagnosed 15 years earlier and treated with oral medication; back pain that "does not elicit true findings of nerve root irritation"; congestive heart failure diagnosed three years earlier; renal insufficiency diagnosed four years earlier; and multiple joint pain with complaints of tenderness on palpation, decreased range of motion, and limping on ambulation. [AR 39, 552]. Dr. To opined that plaintiff could perform light work, with some nonexertional agility, postural, and environmental limitations. [AR 39, 552-553].

Plaintiff underwent a coronary angiogram in April 2010, which revealed a 100% right coronary artery occlusion, which was medically managed. [AR 39, 592]. In July 2011, plaintiff reported a four-day

---

[3] There is no indication in Dr. Lewis's report that he recommended that plaintiff use a cane, as plaintiff testified.

history of acute chest pain and was hospitalized with a diagnosis with non S-T elevation myocardial infarction. [AR 592-613]. After discharge, her condition was managed with medications. [AR 568-591, 596-597]. Plaintiff was discharged with instructions to follow a low sodium diet and to engage in activity as tolerated. [AR 596-597]. At the time of her myocardial infarction, plaintiff had a 23-year history of smoking cigarettes[4], occasionally drank beer, and occasionally used marijuana; on discharge, she was instructed to avoid drinking alcohol, using tobacco, or using illicit drugs. [AR 39, 586, 589-592, 596-597].

The ALJ reasonably inferred that the objective medical evidence failed to corroborate the alleged severity of plaintiff's subjective symptoms during the period beginning in December 2010. Although plaintiff received treatment for her medical conditions and related symptoms during that period, the ALJ permissibly found an inconsistency between the alleged severity of her subjective symptoms and her generally conservative care, which consisted of prescribed medications and monitoring, except for her July 2011 hospitalization for myocardial infarction and a post-discharge procedure at Loma Linda University Medical Center. [AR 39, 567-618, 621-631]. See Parra v. Astrue, 481 F.3d 742, 750–751 (9th Cir.2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); see also Edginton v. Colvin, 2015 WL 5108729, at *1 (9th Cir. Sept. 1, 2015) (holding that where the claimant "was generally treated with medications and an electronic transcutaneous electrical nerve stimulation unit for his condition," the ALJ "properly identified [the claimant's] conservative treatment for his alleged disabling pain as a specific, clear, and convincing reason for doubting [the claimant's] credibility concerning the intensity of the pain"). The ALJ also drew a permissibly negative inference from the absence of any treating source functional restrictions. See Light, 119 F.3d at 792 (stating that the ALJ may consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [the claimant] complains"). Dr. To, the only examining physician to assess plaintiff's work-related physical functional capacity, concluded that she could perform a range of light work. Dr. Abejuela, the only examining physician to assess plaintiff's work-related mental functional capacity, found that plaintiff's mental limitations were "none to mild." [AR 528-529]. Macri v. Chater, 93 F.3d 540,

---

[4] Some treatment records state that plaintiff reported that she quit smoking in June 2011, a month before her myocardial infarction. [See AR586, 591, 634]. However, other treatment reports that post-date June 2011 state that plaintiff reported smoking. [See AR 592, 639].

1  544 (9th Cir. 1996) (holding that the ALJ properly rejected the claimant's pain testimony based, in part, on
2  the an examining physician's opinion indicating that the claimant was not disabled).

3        The ALJ also based his adverse credibility finding in part on plaintiff's "fairly normal level of daily
4  activities and interaction." [AR 36]. The ALJ cited documentary and testimonial evidence that plaintiff
5  could prepare simple meals, do some house and yard work, drive a car, go outside alone, shop in stores,
6  attend church, and visit a community center regularly. [AR 36 (citing AR 224-231)]. The ALJ further
7  observed that although plaintiff testified that she needed help with her personal hygiene, Dr. Abejuela
8  reported that plaintiff said she was "able to take care of her hygiene and grooming without assistance." [AR
9  525].

10       Plaintiff's ability to perform the routine daily activities described by the ALJ is not highly probative
11 of her credibility because those activities are not necessarily transferable to a work setting, but it is entitled
12 to some weight.  The ALJ also was justified in drawing a negative inference from the inconsistency
13 between plaintiff's testimony and her statements to Dr. Abejuela. See Molina v. Astrue, 674 F.3d 1104,
14 1112-1113 (9th Cir. 2012) (stating that the ALJ may use "ordinary techniques of credibility evaluation" and
15 may consider "inconsistencies either in the claimant's testimony or between the testimony and the claimant's
16 conduct," "whether the claimant engages in daily activities inconsistent with the alleged symptoms," and
17 whether "the claimant reports participation in everyday activities indicating capacities that are transferable
18 to a work setting," and remarking that "[e]ven where those activities suggest some difficulty functioning,
19 they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of
20 a totally debilitating impairment"); Burch, 400 F.3d at 680 (holding that the ALJ permissibly considered,
21 as one factor in his credibility analysis, the claimant's daily activities, which "suggest she is quite
22 functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her
23 nephew and her boyfriend. She is able to manage her own finances and those of her nephew.").

24       The ALJ articulated specific, clear, and convincing reasons supporting his credibility finding.
25 Accordingly, plaintiff's contentions lack merit.

26 ///
27 ///
28 ///

**Conclusion**

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly, the Commissioner's decision is **affirmed.**

**IT IS SO ORDERED**

October 29, 2015

_____
ANDREW J. WISTRICH
United States Magistrate Judge